IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                      Civ. No. 16-262

$20,109.00 IN UNITED STATES CURRENCY,

$6,723.04 IN FUNDS FROM BANK OF AMERICA
ACCOUNT NO.-4783,

276 PIECES OF COUNTERFEIT
NATIVE AMERICAN JEWELRY,

732 PIECES OF COUNTERFEIT
NATIVE AMERICAN JEWELRY,

    *Defendant-in-rem.*

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action to forfeit and condemn to the use and benefit of the United States of America property that is derived from proceeds of a violation(s) of 18 U.S.C. § 542 that is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); property imported in violation of 18 U.S.C. § 545 that is subject to forfeiture pursuant to 18 U.S.C. § 545; property imported in violation of 19 U.S.C. § 1304 that is subject to forfeiture pursuant to 19 U.S.C. § 1595a(c)(2)(E); and property involved in transactions in violation of 18 U.S.C. § 1956 that is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## DEFENDANT *IN REM*

2. The defendant *in rem* consists of the following:

  a. $20,109.00 in U.S. Currency,

  b. $6,723.04 in Funds from Bank of America account No.-4783,

  c. 276 Pieces of Counterfeit Native American Jewelry, and

  d. 732 Pieces of Counterfeit Native American Jewelry, (hereafter collectively referred to as "Defendant Property").

3. The Defendant Property was seized by the United States Fish and Wildlife Service and the Federal Bureau of Investigation on October 28, 2015, at Calistoga, in the Northern District of California, and Gallup and Albuquerque, in the District of New Mexico.

4. The Defendant Property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

5. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property was found, in part, in this district. Upon the filing of this complaint, the Defendant Property will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7. Since 2012, the Department of the Interior, United States Fish and Wildlife (USFWS) agents, and the Indian Arts and Crafts Board ("IACB") has been conducting an investigation of the sale of counterfeit Native American jewelry. USFWS Special Agent (SA)

2

Russell Stanford has been attached to the IACB since March of 2012. SA Stanford is responsible for investigating violations of the Indian Arts and Crafts Act. SA Stanford's investigation revealed I Jewelers Wholesale Inc. located at 1406 Lincoln Avenue, Calistoga, California 94515 ("IJW") and other businesses associated with IJW, work in concert with others inside and outside the state of New Mexico to design, manufacture, import and fraudulently sell counterfeit Native American jewelry in violation of the Indian Arts and Crafts Act, specifically 18 U.S.C. § 1159.

8. This Act is designed to prevent products from being falsely marketed as "Indian Made" when the products are not, in fact, made by Indians as defined by the Act. Subsection (a) of 18 U.S.C. § 1159 provides:

> (a) It is unlawful to offer or display for sale or sell any good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States.

9. The investigation revealed approximately six retail businesses that sell or sold IJW's counterfeit Native American-style jewelry in New Mexico and approximately three outside the state of New Mexico. These businesses, primarily located in areas of high tourist activity, sell Native American-style jewelry, manufactured in the Philippines and imported by IJW, as genuine Native American-made jewelry.

10. IJW located at the retail store Golden Bear, 1406 Lincoln Avenue, Calistoga, California 94515, served as the United States hub for the distribution of IJW imported Native American-style jewelry to retailers inside and outside the state of New Mexico.

11. From September 25, 2014, to October 7, 2015, twenty-eight shipments of jewelry were imported to IJW at 1406 Lincoln Avenue, Calistoga, California, from exporter Imad's Jewelry in the Philippines. IJW's import declarations identified the contents of all those

shipments as jewelry, with a total declared value of approximately $263,000. All of those declarations listed Imad's Jewelry as the foreign supplier and IJW as the U.S. importer, and each reported raw materials for the jewelry consistent with Native-American style jewelry (i.e., wild products such as shell and coral products). Because wildlife products were contained in those raw materials, IJW was required to declare its commercial importations to USFWS.

12. The contents of two of twenty-eight known shipments were examined, documented, and photographed on February 10, 2015, by USFWS inspectors at the United Parcel Service ("UPS") hub in Louisville, Kentucky, and on February 20, 2015, by SA Stanford at the UPS facility in Ontario, California. Those two shipments contained a total of 313 pieces of Native-American style jewelry with a total declared value of $20,045. All of the jewelry were marked with initials "IJ," but were not marked with the country of origin, the Philippines, as required by law. Photographs were taken of all of the jewelry and a number of jewelry pieces in each shipment were covertly marked for later identification. After clearance, the two shipments were delivered via UPS to IJW in Calistoga, California, and were signed for by "Aysheh" on February 12, 2015, and "Ray" (later determined to be Raed Aysheh) on February 23, 2015.

13. Upon comparison by SA Stanford, the photographs of the jewelry in the two shipments described above were consistent with the Native-American style jewelry purchased by USFWS agents at the Golden Bear store in Calistoga, California, on February 21, 2015, and July 7, 2015; Ortega's Indian Trade Center in Gallup, New Mexico, on June 19, 2015; and, on September 25, 2015, at the Soaring Eagle Native Art in Ketchikan, Alaska. All these businesses were owned and operated by members of the Aysheh family. And all of the agent's undercover purchases of jewelry were video and audio recorded.

14. This investigation has revealed that Aysheh family members are in the business of manufacturing counterfeit Native-American jewelry at Imad's Jewelry, a factory in Mandaue City, Cebu, Philippines, and exporting that jewelry to IJW in Calistoga, California, which retains a portion of that jewelry for sale at Golden Bear and also serves as the distributor of the jewelry to other retail stores operated by Aysheh family members and others in other parts of the United States. The Aysheh family, whose ethnicity is Palestinian, are not members of an "Indian tribe," or "certified as an Indian artisan by an Indian tribe," as defined in 18 U.S.C. § 1159(c) and 25 U.S.C. § 450b. Nor is the IJW organization a "legally established arts and crafts marketing organization composed of members of Indian tribes" pursuant to 18 U.S.C. §1 159(c)(4).

15. On March 17, 2014, Imad Manassra (whose original name is Imad Aysheh), registered his business "Imad's Jewelry," in the Philippines "to engage in the business of JEWELRY MANUFACTURING AND EXPORT," as set forth on the Certificate of Authority (no. 2014-01) issued by the Republic of the Philippines, Department of Trade. On May 23, 2014, Manassra was departing the United States at the San Francisco International Airport on Philippines Airlines flight #105 in route to Cebu, Philippines where his factory, Imad's Jewelry, is located. When questioned by U.S. Customs officers, Manassra stated that he owned a jewelry manufacturing business in Cebu, and that his business was located in the Philippines for the "cheap labor" that is available.[1] Manassra claimed that, while in the United States, he stays with his brother Raed Aysheh. Manassra was carrying approximately $7,050 in U.S. currency and explained that the money was from his own bank accounts and was intended to finance his

---

[1] The investigation also revealed that previously the Aysheh family operated a manufacturing facility in Gallup, New Mexico, and employed real Native American artisans and used similar molds to produce Native American-style jewelry for sale.

5

business expenses in the Philippines. Manassra was also in possession of a carry-on bag which was filled with dozens of jewelry molds made of silicon and rubber.

16.     According to California Secretary of State records, Iyad Aysheh is listed as the resident and sole signatory on the IJW business account, as well as the agent for IJW. His brother, Raed Aysheh, works at the IJW retail store, Golden Bear, and is listed as holding various IJW positions, including CEO and manager, on open source databases.

17.     Based upon New Mexico Secretary of State records, Mohammad Aysheh is listed as the Director and President of the store, Ortega's Indian Trade Center, located at 3306 E. Hwy 66, Gallup, New Mexico. Mohammad Aysheh is related to Imad, Iyad, and Raed Aysheh. Another relative, Abdullah Aysheh, operates Ortega's Indian Trade Center. As described further below, SA Stanford purchased counterfeit Native-American jewelry at Ortega's Indian Trade Center on June 19, 2015. On September 25, 2015, SA Stanford purchased additional counterfeit Native-American jewelry at Soaring Eagle Native Art located at 53 Main Street, Ketchikan, Alaska. SA Stanford's review of Alaskan business licensing records revealed that another Aysheh family member, Jowdat M. Aysheh, is listed as the owner of Soaring Eagle.

18.     This investigation has revealed that Aysheh family members own and operate other retail stores across the United States that sell Native-American style jewelry. SA Stanford has purchased Native-American style jewelry in five of those stores located in New Mexico, Alaska, and California. Although the merchandise and sales techniques at the various stores are similar, IJW d.b.a. Golden Bear in Calistoga, California, is the only store that directly receives shipments from Imad's Jewelry in the Philippines. IJW's modus operandi is to replicate genuine Native-American jewelry designs at its factory, Imad's Jewelry, in the Philippines; fail to comply with the law that requires that "Made in Philippines" be placed on products manufactured in the

Philippines; import and sell the jewelry at the Golden Bear store in Calistoga, California; and also distribute the jewelry to its other retail stores in the United States.

19.     SA Stanford's review of IJW's bank records shows a financial relationship between IJW's business account and the other stores owned and operated by Aysheh family members. In addition, based upon its bank records, IJW transfers large sums of money to Imad's Jewelry's bank account in the Philippines.

**Inspection of Two IJW Shipments Imported from Imad's Jewelry in the Philippines**

20.     On February 9, 2015, Special Agent Stanford was notified that a shipment destined for IJW had been imported from the Philippines and was awaiting clearance at the UPS hub in Louisville, Kentucky. The shipping details on the air waybill included the exporter Imad's Jewelry in Mandaue City, Cebu, Philippines; the importer I Jewelers Wholesale, Inc. at 1406 Lincoln Avenue, Calistoga, CA 94515, and a phone number, (707) 291-7372, listed for Iyad Aysheh in a law enforcement database.

21.     On February 10, 2015, USFWS Wildlife Inspectors Larison and Kelly from the USFWS office in Louisville, Kentucky, inspected the entire shipment. The inspectors observed that the shipment contained 140 pieces of Native-American style jewelry, which were marked with the initials "IJ" and were devoid of any markings denoting that the items had been manufactured in the Philippines. All of the jewelry in the shipment were inspected, documented, and photographed, and thirty-three pieces of jewelry were covertly marked for later identification. IJW's import declaration to USFWS stated that the shipment contained jewelry with a declared value of $7,575. After clearance by USFWS and U.S. Customs and Border Protection, the shipment was delivered via UPS to IJW in Calistoga, California, on February 12, 2015, and signed for by "Aysheh," as revealed on UPS documents.

7

22. On February 18, 2015, SA Stanford was notified that IJW had imported another shipment from Imad's Jewelry in the Philippines. On February 20, 2015, SA Stanford traveled to the Ontario UPS facility, where he inspected, documented, and photographed the contents of the shipment, which contained 173 pieces of Native-American style jewelry. IJW's import declaration to USFWS stated that the shipment contained jewelry with a declared value of $12,470. SA Stanford observed that none of the jewelry, or the bags in which they were packaged, were marked with anything denoting that they had been manufactured in the Philippines. SA Stanford covertly marked several pieces of jewelry, including bracelets and bear pendants, contained in that shipment. On February 23, 2015, UPS delivered the shipment to IJW at 1406 Lincoln Avenue, Calistoga, California. "Ray," later identified as Raed Aysheh, signed for that shipment.

**Undercover Purchases at IJW-supplied Stores in California, New Mexico, and Alaska.**
*IJW d.b.a. Golden Bear in Calistoga, California*

23. On February 21, 2015, SA Stanford traveled to IJW d.b.a. Golden Bear located at 1406 Lincoln Avenue, Calistoga, California SA Stanford observed jewelry displayed in the store's windows and several cases filled with jewelry inside the store. A store employee, who introduced himself as "Ray" (hereafter referred to as Raed Aysheh) showed a bracelet to SA Stanford and explained the "pueblo" design on the bracelet. Raed Aysheh told SA Stanford that the bracelet is "Navajo" and was on sale for $1,475. Raed Aysheh claimed that the jewelry in the store was supplied from Arizona and New Mexico. SA Stanford mentioned that he had previously seen Navajo jewelry that was not like the inlaid jewelry for sale in the store. Raed Aysheh responded that, for the past 10-15 years, they (the Navajo) have been making more modern jewelry and that the jewelry was all from different artists. SA Stanford observed a bear pendant and bracelet that he knew to be consistent with items from the IJW shipment at the

8

Ontario UPS facility that he had inspected and photographed the night before on February 20, 2015. When SA Stanford asked about the "IJ" initials stamped on the bracelet, Raed Aysheh claimed that they were the artist's initials, but did not know the name of the artist. SA Stanford also observed a "spinner" necklace consistent with a necklace that he had also seen in the IJW shipment. Raed Aysheh told SA Stanford that the necklace was "Navajo" made. None of the jewelry in the store was marked in any way to inform the customers that those items were made in the Philippines. SA Stanford purchased a Native-American style bear pendant and bracelet for $1,890 from Raed Aysheh. SA Stanford was given a Golden Bear business card that listed products available in the store to include, "Native American Jewelry." A picture of a bear pendant similar to that purchased by SA Stanford was also displayed on the card.

24. On February 25, 2015, SA Stanford compared the bear pendant and the bracelet that he purchased at Golden Bear with the photographs of the IJW jewelry imported on February 9, 2015. SA Stanford observed identical traits shared between the jewelry that he had purchased at Golden Bear and the imported jewelry from the Philippines that was photographed at the UPS facility in Louisville, Kentucky, on February 10, 2015. The matching features included the overall designs in the pieces of jewelry, unique patterns in the placement of the "stars" in the bracelet, and unique stone matrices used in the inlaid design. In addition, SA Stanford observed a white covert marking on the bracelet at the same location that USFWS inspectors had covertly marked that jewelry at the UPS hub in Louisville, Kentucky, on February 10, 2015.

25. On July 7, 2015, SA Noel Wagner, also assigned to USFWS in New Mexico, entered the Golden Bear store in Calistoga, California. SA Wagner observed several items, including a bear pendant, which were consistent with the jewelry from the IJW shipment inspected and photographed at the UPS hub in Louisville, Kentucky, on February 10, 2015. SA

Wagner spoke to Raed Aysheh, a sales person who introduced himself as "Ray." SA Wagner purchased a bear pendant for $712.80 from Raed Aysheh, who described the item as "Native-American made." Raed Aysheh stated that he had been in the jewelry business for many years and had traveled "all over the United States" and "suppl[ied] people who have shops." SA Wagner observed that Golden Bear continued to stock its store with jewelry consistent with the IJW imports, displayed and offered the jewelry for sale as Native-American made, and that the jewelry was not marked with the country where it was manufactured.

26. On that same day, July 7, 2015, SA Stanford compared the bear pendant purchased by SA Wagner with photographs of bear pendants taken during the import inspection at the UPS hub in Louisville, Kentucky, on February 10, 2015. SA Stanford observed identical traits between the purchased bear pendant and the photographed bear pendant, including the overall designs in both items, unique patterns in the placement of the "stars," and unique anomalies in the stones matrices.

*Ortega's Indian Trade Center in Gallup, New Mexico*

27. Based upon New Mexico Secretary of State records, Mohammad Aysheh is listed as the Director and President of Ortega's Indian Trade Center, a store located at 3306 E. Hwy 66 in Gallup, New Mexico. On June 19, 2015, SA Stanford entered that store, where he observed various Native-American style arts and crafts for sale, including bear pendants and several necklaces, consistent with the imported IJW jewelry that he had inspected and photographed at the Ontario UPS facility on February 20, 2015. A male employee, later identified as Abdullah Aysheh (Mohammad Aysheh's son), pointed to five cases of jewelry inside the store and represented to SA Stanford that all of the jewelry in those cases were made by Navajo artist

Calvin Begay. From those cases, Abdullah Aysheh showed SA Stanford various bear pendants, other pendants, and other pieces of jewelry, and again attributed that jewelry to Calvin Begay.

28. Abdullah Aysheh gave SA Stanford a receipt for his purchase of the bear pendant and a Calvin Begay biography card. SA Stanford had observed several cards with Calvin Begay's name, photograph, and biography prominently displayed throughout the store on the jewelry cases. Calvin Begay is a celebrated Navajo jeweler who was born in Gallup, New Mexico, in 1965. Begay has won several industry awards and is well-known for his precision inlay and silver work.

29. Abdullah Aysheh told SA Stanford that another store down the street, Gallup Indian Plaza, also sells Calvin Begay jewelry. Abdullah Aysheh further stated that Gallup Indian Plaza and Ortega's Indian Trade Center are both owned by the same person, Abdullah Aysheh's father (Mohammad Aysheh).

30. On that same day, June 19, 2015, SA Stanford returned to Ortega's Indian Trade Center to purchase a second bear pendant. Abdullah Aysheh again assisted SA Stanford with the purchase of the pendant, also described by Aysheh as being made by Calvin Begay.

31. On October 16, 2015, SA Wagner and an assisting federal law enforcement agent visited Ortega's in a covert manner and discovered that the business was under renovation and was "now located at Gallup Indian Plaza," according to a notice on the door. All of the merchandise in the store appeared to have been removed as well. Gallup Indian Plaza is located at 3800 E Highway 66 in Gallup, New Mexico, and is also owned by Mohammed Aysheh.

32. The assisting federal agent visited Gallup Indian Plaza in a covert manner and contacted both Mohammed and Abdullah Aysheh. Abdullah Aysheh assisted the agent while she was in the store. The agent confirmed that the merchandise in the store was consistent with the

imported photographs she reviewed. SA Stanford's review of the assisting agent's covert video taken in the Gallup Indian Plaza, also allowed him to identify items consistent with IJW imports, the merchandise he viewed at Golden Bear in Calistoga, CA, as well as, the previous location at Ortega's Indian Trade Center, d.b.a. Gilbert Ortega's Indian Arts.

33. On October 28, 2015, agents executed a search warrant at Gallup Indian Plaza and seized 1,689 pieces of Native American-style jewelry consistent with the IJW imports. The owner, Mohammed Aysheh, later confirmed in an interview with SA Stanford that much of the seized jewelry was imported by IJW and sold to him by Aysheh relatives.

34. On September 25, 2015, SA Stanford entered Soaring Eagle Native Art, a retail store located at 53 Main St. in Ketchikan, Alaska, owned by Jowdat M. Aysheh. SA Stanford immediately recognized several bracelets, necklaces and pendants as being consistent with the jewelry imported by IJW from the Philippines. SA Stanford advised the store employee that he would like to look at a brown and green colored inlaid bear pendant and an inlaid bracelet. SA Stanford recognized those jewelry pieces as almost identical to the jewelry that he had purchased from Golden Bear in Calistoga, CA, on February 21, 2015. The store employee told SA Stanford that the bear pendant was "handcrafted by Native American . . . Indian Native Indian American." The store employee showed SA Stanford the "IJ" initials that were stamped on the pendant and claimed that those initials corresponded with the initials of the Native-American artist Irvin Johnson. The "IJ" initials were on all of the bracelets that SA Stanford observed inside Soaring Eagle Native Art and were also consistent with the jewelry that IJW had previously imported from Imad's Jewelry in the Philippines. SA Stanford purchased a bear pendant and bracelet for a total of $1,540.

12

35. On September 28, 2015, SA Stanford compared the pendant and bracelet that he had purchased at Soaring Eagle Native Art with photographs of jewelry from the IJW imported shipment taken at the UPS hub in Louisville, Kentucky, on February 10, 2015. SA Stanford observed identical traits in the compared bracelets, including the same unique placement of inlaid "stars," and unique inlaid stones, and markings in the stone matrices. SA Stanford also observed identical traits in the compared bear pendants, including matching inlaid design and markings in the stone matrix.

## Forensics Comparison of Bear Pendants

36. On September 9, 2015, SA Stanford provided the National Fish and Wildlife Forensics Laboratory in Ashland, Oregon, with three bear pendants for examination to determine, among other things, whether all three items had been manufactured using the same mold or stamp. The three bear pendants consisted of one bear pendant purchased by SA Wagner at the Golden Bear store in Calistoga, California, on July 7, 2015, and two bear pendants purchased by SA Stanford at Ortega's Indian Trade Center in Gallup, New Mexico, on June 19, 2015.

37. On September 14, 2015, the laboratory completed the analysis and concluded that all three bear pendants "share the same class characters" which "were alike and never dissimilar" at different levels of magnification ranging from 5x to 30x. In sum, "this analysis cannot reject the hypothesis that these pendants have a common source."

## Execution of Search Warrants

38. A Federal search and seizure warrant was executed on October 28, 2015, at 1406 Lincoln Avenue, Calistoga, California. Along with documents, computers, phones, and 276 pieces of counterfeit Native American jewelry, agents seized $20,109.00 in US Currency

constituting proceeds from the sale of counterfeit Native American jewelry. The jewelry is described in more detail in Attachment 1.

39. A Federal search and seizure warrant was executed on October 28, 2015, on $6,723.04 in funds of bank account number -4783 held in the business name of IJW at Bank of America, 100 North Tryon St., Charlotte, NC 28255.

40. A Federal search and seizure warrant was executed on October 28, 2015, at Gallup Indian Plaza, 3800 East Highway 66, Gallup, New Mexico. Agents seized 732 pieces of counterfeit Native American jewelry. The jewelry is described in more detail in Attachment 2.

### FIRST CLAIM FOR RELIEF

41. The United States incorporates by reference the allegations in paragraphs 1 through 40 as though fully set forth herein.

42. 18 U.S.C. § 981(a)(1)(C) provides, in part, for the forfeiture for any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 542, enumerated among other crimes, or conspiracy to commit such offense(s).

43. 18 U.S.C. § 542 prohibits the introduction or attempt to introduce into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance.

44. The Defendant Counterfeit Jewelry listed in Attachments 1 and 2, the Defendant Currency, and the Defendant Funds are the proceeds of violation(s) of 18 U.S.C. § 542 or are the proceeds traceable to such property and are thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

### SECOND CLAIM FOR RELIEF

45. The United States incorporates by reference the allegations in paragraphs 1 through 40 as though fully set forth herein.

46. 18 U.S.C. § 545 prohibits the importation into the United States of any merchandise contrary to law or the receipt, concealment, purchase, or sale or the facilitation of the transportation, concealment, or sale of such merchandise after importation.

47. The Defendant Counterfeit Jewelry listed in Attachments 1 and 2 was introduced into the United States or received, concealed, purchased, sold or transported in violation of 18 U.S.C. § 545 and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 545.

### THIRD CLAIM FOR RELIEF

48. The United States incorporates by reference the allegations in paragraphs 1 through 40 as though fully set forth herein.

49. 19 U.S.C. § 1304 requires that every article of foreign origin (or its container) imported into the United States be marked in a conspicuous place with the name of the country of its origin.

50. The Defendant Counterfeit Jewelry listed in Attachments 1 and 2 was marked intentionally in violation of 19 U.S.C. § 1304 and is thus subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(2)(E).

### FOURTH CLAIM FOR RELIEF

51. The United States incorporates by reference the allegations in paragraphs 1 through 40 as though fully set forth.

52. 18 U.S.C. § 981(a)(1)(A) subjects to forfeiture property involved in a transaction or attempted transactions in violation of 18 U.S.C. § 1956 or property traceable to such property.

The Defendant Funds were involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956 or are traceable to such transactions and are thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

(1) That, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), a Warrant of Arrest *In Rem*, in the form submitted with this Complaint, be issued to the United States Attorney General or to any duly authorized law enforcement officer by the Clerk of this Court, as the defendant personal property is already in the possession, custody or control of the United States;

(2) That the Court direct any and all persons having any claim to the defendant properties to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G, or suffer default thereof;

(3) That the defendant properties be forfeited and condemned to the use and benefit of the United States of America; and

(4) That plaintiff be awarded its costs and disbursements in this action and such other and further relief as this Court deems proper and just.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

STEPHEN R. KOTZ
KRISTOPHER N. HOUGHTON
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the United States Fish and Wildlife Service who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 4/6/16

R. Stanford
Russ Stanford, Special Agent
United States Fish and Wildlife Service